UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

450 WEST 31ST STREET OWNERS CORP.,
ET AL.,                                          25-cv-705 (JGK)

                        Plaintiffs,             MEMORANDUM OPINION
          - against -                           AND ORDER

CHUBB AND SON, INC., ET AL.,

                        Defendants.
_____

JOHN G. KOELTL, District Judge:

      This action arises out of pending litigation in New York

state court against the plaintiffs in this case, 450 West 31st

Street Owners Corporation ("450 West") and Karen Atta ("Atta")

(the "Underlying Litigation"). The plaintiffs brought this ac-

tion seeking a declaration that the defendants, Federal Insur-

ance Company ("Federal") and Great American Alliance Insurance

Company ("Great American"),[1] must indemnify them in the Underly-

ing Litigation pursuant to a directors and officers liability

policy issued by Federal (the "Federal Primary Policy") and an

umbrella policy issued by Great American (the "Great American

Umbrella Policy"). The defendants move pursuant to Federal Rule

of Civil Procedure 56 for summary judgment declaring that nei-

ther insurer has a duty to defend or indemnify the plaintiffs in

_____

[1] In the Complaint, the plaintiffs incorrectly named Federal as
"Chubb and Son, Inc." and Great American as "Great American Al-
liance Insurance Company of New York." Mem. of Law in Supp. of
Mot. ("Br.") 1, ECF No. 29.

the Underlying Action and dismissing the Complaint with prejudice. For the reasons that follow, the defendants' motion is **granted**.

## I.

The following facts are taken from the parties' Local Rule 56.1 statements, counterstatements, and supporting papers and are undisputed unless otherwise noted.

## A.

Federal issued the Federal Primary Policy to 450 West; the policy was effective from March 2, 2018, to March 2, 2019, and provides coverage for directors and officers, with a limit of $1 million per claim. Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") ¶ 1, ECF No. 29-1; Ex. A to Declaration of James T.H. Deaver ("Deaver Decl."). The Federal Primary Policy contains a prior and pending litigation exclusion (the "PPL Exclusion"), which provides that Federal:

> shall not be liable for Loss on account of any Claim
> directly or indirectly based upon, arising from, or in
> consequence of . . . any claim, demand, suit, arbitra
> tion, administrative or grievance proceeding or other
> proceeding pending, or order, decree or judgment en
> tered for or against any Insured on or prior to the
> Pending or Prior Litigation Date set forth in Item 7
> of the Declarations [June 21, 2007], or the same or
> any substantially similar fact, circumstance or situa
> tion underlying or alleged therein.

Defs.' 56.1 ¶ 2; Ex. A to Deaver Decl. at 24.

The Federal Primary Policy also contains a property damage exclusion (the "Property Damage Exclusion"), which provides that

2

Federal "shall not be liable for Loss on account of any Claim for any Property Damage." Defs.' 56.1 ¶ 3; Ex. A to Deaver Decl. at 21-25. The Federal Primary Policy defines "Property Damage" as "damage or destruction of any tangible property, or the loss of use of tangible property whether or not such property is damaged or destroyed." Defs.' 56.1 ¶ 3; Ex. A to Deaver Decl. at 21-25.

Great American issued a master umbrella policy and a corresponding certificate of coverage to 450 West, effective from March 2, 2018, to March 2, 2019, and with liability limits of $10 million for each occurrence and in the aggregate. Defs.' 56.1 ¶ 4-5; Ex. B to Declaration of Mark R. Vespole ("Vespole Decl."), ECF No. 31-1. The Great American Umbrella Policy follows form to the Federal Primary Policy with respect to the PPL and Property Damage Exclusions. Defs.' 56.1 ¶ 6; Ex. B to Vespole Decl. ("This policy follows form to the remaining sections of the underlying insurance that provides coverage for any wrongful act under the insuring agreements section of such Directors and Officers Liability Coverage, and for no broader coverage than is provided by such policy.").

**B.**

On July 20, 2018, Heykal Properties, LLC ("Heykal") and Union Square Surgical Center, LLC ("Union Square Surgical" and, together with Heykal, the "Heykal Plaintiffs") initiated the

3

Underlying Litigation by filing a complaint (the "Underlying Complaint") against 450 West and Atta in the Supreme Court of the State of New York, New York County.[2] Defs.' 56.1 ¶ 7; Ex. C to Vespole Decl., ECF No. 31-2. The Underlying Complaint alleges that 450 West owns a commercial co-op building located at 450 West 31st Street, New York, NY (the "Building"), that Atta is the president of 450 West, and that on December 18, 2015, Heykal became the lessee of Unit 2 South in the Building. Defs.' 56.1 ¶ 8-9; Ex. C to Vespole Decl. ¶¶ 3-4, 15. The Underlying Complaint further alleges that, pursuant to the lease, Unit 2 South includes an adjacent roof terrace. Defs.' 56.1 ¶ 10; Ex. C to Vespole Decl. ¶¶ 7-9. According to the Underlying Complaint, Heykal and Union Square Surgical intended to construct an ambulatory surgical center in Unit 2 South and requested to place certain HVAC equipment necessary to operate the surgical center on the roof terrace. Defs.' 56.1 ¶ 11; Ex. C to Vespole Decl. ¶¶ 6, 21-27. The Underlying Complaint alleges that 450 West improperly refused to permit the Heykal Plaintiffs to use the roof terrace, resulting in delays to the construction of the surgical center. Defs.' 56.1 ¶ 12, 18-19; Ex. C to Vespole Decl. ¶¶ 28-37. The Heykal Plaintiffs were allegedly unable to build a third operating room because they were forced to place HVAC equipment

---

[2] The Underlying Litigation is captioned Heykal Properties v. 450 West 31st Street Owners Corp. No. 653641/2018 (N.Y. Sup. Ct.).

4

inside the unit, rather than on the roof terrace. Defs.' 56.1 ¶ 18-19. They claim damages from the construction delays, as well as from the loss of operating room space. In the Underlying Litigation, the Heykal Plaintiffs seek a declaration that they have the exclusive right to use the roof terrace. Defs.' 56.1 ¶ 12, Ex. C to Vespole Decl. ¶¶ 54-55.

The Underlying Complaint also alleges that Unit 2 South was previously the subject of an action filed in the Supreme Court of the State of New York, New York County, <u>Ahn Tai Chi Studio, Inc. v. 450 West 31st Street Owners Corp.</u> No. 600797/1999 (N.Y. Sup. Ct.) (the "1999 Lawsuit"). Defs.' 56.1 ¶ 13, Ex. C to Vespole Decl. ¶ 11; Ex. D to Vespole Decl., ECF No. 31-4. In the 1999 Lawsuit, the court issued a preliminary injunction restraining the defendants in that action, including 450 West and Atta, from "interfering with the plaintiff's [<u>i.e.</u>, the then-owner of Unit 2 South] use and enjoyment of the terrace adjoining its apartment." Defs.' 56.1 ¶ 14; Ex. C to Vespole Decl. ¶ 11; Ex. E to Vespole Decl., ECF No. 31-5.

### c.

In their coverage position letters to 450 West, Federal and Great American reserved their rights to disclaim coverage in the Underlying Litigation based on the PPL and Property Damage exclusions. Defs.' 56.1 ¶¶ 26-31; Ex. K to Deaver Decl., ECF No. 30-2; Ex. L to Vespole Decl., ECF No. 31-10. The plaintiffs

filed this action on January 23, 2025, seeking a declaration that, under the Federal Primary and Great American Umbrella Policies, the defendants must indemnify the plaintiffs for any damages assessed against them in the Underlying Action. ECF No. 1. On May 21, 2025, the court in the Underlying Action found for the Heykal Plaintiffs on the question of liability. Defs.' 56.1 ¶ 22; Ex. I to Vespole Decl., ECF No. 31-8. The defendants now move for summary judgment declaring that neither defendant has a duty to defend or indemnify the plaintiffs in the underlying action and dismissing the Complaint with prejudice. See Notice of Mot., ECF No. 28.

## II.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## III.

The defendants contend that both the PPL and Property Damage Exclusions bar coverage for the underlying action.

7

As a threshold matter, "a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits." Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013). "Pursuant to New York's choice-of-law rules, an agreement between the parties to apply New York law, even where that agreement is implicit, is sufficient to establish the appropriate choice of law." Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 252 (S.D.N.Y. 2013). Because the parties' briefs apply New York law, New York law governs. See id.

Under New York law, insurance policies are interpreted according to the general rules of contract interpretation. Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 98 (2d Cir. 2012). Unambiguous terms in an insurance policy should be "given their plain and ordinary meaning," McCarthy v. Am. Int'l Grp., Inc., 283 F.3d 121, 124 (2d Cir. 2002), and ambiguities are "to be construed against the insurer, particularly when found in an exclusionary clause," Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co., 457 N.E.2d 761, 764 (N.Y. 1983). "The matter of whether the contract is ambiguous is a question of law for the court." Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010). Policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract

8

itself, and concerning which there is no reasonable basis for a difference of opinion." <u>Olin</u>, 704 F.3d at 99.

**A.**

In response to the defendants' motion, the plaintiffs claim, without explanation, that the PPL Exclusion is ambiguous and must be interpreted in their favor. <u>See</u> Mem. of Law in Opp. to Mot. ("Opp.") 8, 13, ECF No. 34. But an exclusion is not ambiguous merely because the plaintiffs say so. Indeed, the PPL Exclusion clearly and unambiguously excludes coverage for losses "arising from . . . any claim, demand, [or] suit . . . entered against any Insured on or prior to . . . [June 21, 2007], or the same or any substantially similar fact, circumstance or situation underlying or alleged therein." Defs.' 56.1 ¶ 2; Ex. A to Deaver Decl. at 24. Nothing in the plain language of the PPL Exclusion is ambiguous. <u>See</u> <u>Zunenshine v. Exec. Risk Indem., Inc.</u>, No. 97-cv-5525, 1998 WL 483475, at *4 (S.D.N.Y. Aug. 17, 1998), <u>aff'd</u> 182 F.3d 902 (2d Cir. 1999).

It is clear that, at the very least, the Underlying Litigation is based on "the same or any substantially similar fact, circumstance or situation underlying" the 1999 Lawsuit, namely the ability of the tenants of Unit 2 South to make use of the unit's adjoining roof terrace. The plaintiffs attempt to argue that the PPL Exclusion is inapplicable because the Underlying Litigation concerns a lease dated December 18, 2025, between the

9

Heykal Plaintiffs and 450 West and Atta, whereas the 1999 Lawsuit concerned a prior lease involving a different tenant. See Opp. 9. But such a narrow interpretation of the PPL Exclusion would render the language "any substantially similar fact, circumstance or situation" meaningless. Under New York law, courts "must construe [an insurance policy] in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect. In particular, surplusage is a result to be avoided." Olin Corp. v. Certain Underwriters at Lloyd's, London, 350 F. Supp. 3d 288, 294 (S.D.N.Y. 2018).

The complaints in the 1999 Lawsuit and the Underlying Litigation allege nearly identical claims — the loss of use of the roof terrace adjoining Unit 2 South — against the same defendants: 450 West and Atta. Compare Ex. C to Vespole Decl., with Ex. D to Vespole Decl.; see also Br. 6. Because the Complaint in the Underlying Litigation seeks relief based on "substantially similar fact[s], circumstance[s], or situation[s]" underlying the 1999 Lawsuit, the PPL Exclusion unambiguously bars coverage, and the defendants have no duty to defend or indemnify 450 West and Atta in the Underlying Litigation.

**B.**

The Property Damage Exclusion bars coverage for claims arising out of "damage or destruction of any tangible property,

10

or the loss of use of tangible property whether or not such property is damaged or destroyed." Defs.' 56.1 ¶ 3. The Underlying Litigation concerns the Heykal Plaintiffs' claim that they suffered damages due to 450 West and Atta's (1) delays in approving renovation plans for the surgical center and (2) refusal to allow the Heykal Plaintiffs to place HVAC equipment on the roof terrace, thereby reducing the number of operating rooms in the surgical center from three to two. Defs.' 56.1 ¶¶ 7-12, 17-21, 25. Plainly, the Heykal Plaintiffs' alleged losses arise out of "the loss of use of tangible property" — that is, Unit 2 South and its adjacent roof terrace.

In opposing the defendants' motion, the plaintiffs attempt to limit the Property Damage Exclusion to personal property, Opp. 6, but the policies contain no such limitation. Defs.' 56.1 ¶ 3; Ex. A to Deaver Decl. The plaintiffs also argue that "[t]he common sense meaning of tangible property, which accords with human experience . . . is property which [sic] can be touched and is palpable." Opp. 12. The plaintiffs do not explain how that understanding renders the Property Damage Exclusion inapplicable to the claims at issue in the Underlying Litigation. The Heykal Plaintiffs' alleged losses arise out of the loss of use of the unit and the adjacent terrace — tangible property that can be touched.

11

Because the Property Damage Exclusion unambiguously bars coverage arising out of the Heykal Plaintiffs' loss of use of Unit 2 South, the defendants have no duty to indemnify 450 West and Atta in the Underlying Litigation. See Bd. of Managers of Yardarm Condo. II v. Fed. Ins. Co., 669 N.Y.S.2d 332, 332 (App. Div. 1998) (upholding insurer's denial of coverage for loss of use of a condominium unit under a directors' and officers' liability policy containing a substantially similar property damage exclusion).

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted**, and the Complaint is **dismissed with prejudice**. The Clerk is respectfully requested to enter judgment dismissing the Complaint with prejudice. The Clerk is also requested to close all pending motions and to close this case.


**SO ORDERED.**
**Dated:    New York, New York**
**          April 30, 2026**

_____
**John G. Koeltl**
**United States District Judge**

12